UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ROSA E. MORENO-LIVINI,

    Plaintiff,

       v.

THE AFL-CIO HOUSING INVESTMENT
TRUST, *et al.*,

    Defendants.

Civil Action No. 24-1392 (JEB)

---

**MEMORANDUM OPINION**

    Plaintiff Rosa Moreno-Livini was fired less than a year and a half after starting a full-time position as a Managing Director for Defendant AFL-CIO Housing Investment Trust. In her telling, much of what occurred during that period involved worsening mistreatment at the hands of her supervisors, culminating in her abrupt termination. Claiming that she was discriminated against because of her race, gender, and age, she has now sued HIT and three of those supervisors under various federal and local antidiscrimination statutes. In response, Defendants have moved to dismiss the case for failure to state a claim, arguing that Plaintiff has not shown that she was treated worse than similarly situated employees nor otherwise pled sufficient factual allegations to support an inference of discrimination. Despite the modest bar set for Moreno-Livini at this stage of the proceedings, she fails to clear it, and so the Court will grant the Motion.

**I.    Background**

    The Court draws on the facts as pled in the Complaint, taking them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113–14 (D.C. Cir. 2000). Defendant HIT is

1

an investment company registered with the Securities and Exchange Commission that focuses on investing union workers' pensions in fixed-income securities. See ECF 1 (Compl.), ¶ 11. Among its employees are Defendants Chang Suh, its Chief Executive Officer; Lesyllee White, its Chief Marketing Officer; and Erika Khatchadourian, its Chief Financial Officer and Human Resources representative. Id., ¶¶ 15–17. In or around May 2020, Defendants hired Plaintiff as a consultant to develop strategies for institutional-investor outreach and to source a public-relations firm for the company. Id., ¶ 19. Apparently satisfied with her work, HIT then offered her a full-time position as a Managing Director focused on institutional business development and capital raising across defined-contribution channels, primarily public plans. Id., ¶ 23.

Although Moreno-Livini was apparently a standout performer in her first year at the company, id., ¶ 27, she nonetheless alleges that she was mistreated by her superiors because she is a "55-year-old Latina woman." Id., ¶ 10. In comparison with four of her "white, male colleagues," id., ¶¶ 25, 28, Plaintiff alleges that she alone was forced to work out of HIT's headquarters in the District of Columbia, denied remote-work or hybrid-work options, assigned lower-level work not suitable for her position, prevented from traveling to conferences for work, isolated and alienated from her colleagues, and subjected to a hostile work environment. Id., ¶¶ 24–41. To cap it all off, she was eventually fired over Zoom while recuperating from a COVID-19 infection. Id., ¶ 43.

Suspecting that race-, sex-, and age-based animus motivated this alleged mistreatment, Moreno-Livini filed this action, which contains four counts. The first alleges that all four Defendants violated 42 U.S.C.§ 1981, which prohibits race-based discrimination in employment. See Compl., ¶¶ 56–60. Count II alleges that HIT violated Title VII of the Civil Rights Act, which prohibits employers from discriminating on the basis of race, color, sex, or national origin,

2

id., ¶¶ 61–66, and Counts III and IV invoke the Age Discrimination and Employment Act, id., ¶¶ 67–69, and the District of Columbia Human Rights Act, respectively. Id., ¶¶ 70–73. After Defendants moved to dismiss, Plaintiff dropped both Count III and the Count I claim against Khatchadourian. See ECF No. 9 (Opp.) at 16–17.

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow, 216 F.3d at 1113 (cleaned up). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). That means a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## III.    Analysis

With Count III withdrawn, the Court need address only Counts I, II, and IV. Ultimately, Moreno-Livini's failure to plausibly allege that her white, male coworkers were similarly situated to her dooms both her § 1981 and Title VII claims. After thus dismissing those two counts, the Court will decline to exercise supplemental jurisdiction over her DCHRA claim.

    A.  Count I

Section 1981 protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" — including "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" — without respect to race. See 42 U.S.C. § 1981(a)–(b). "[T]o state a claim for racial discrimination under Section 1981, a plaintiff must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." Mazloum v. Dist. of Columbia Metro. Police Dep't, 522 F. Supp. 2d 24, 37 (D.D.C. 2007) (internal quotation marks omitted). The statute encompasses employment contracts such as the one here. See Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 576 (D.C. Cir. 2013).

"To plead intentional discrimination, a plaintiff cannot merely invoke his race, but must allege some facts to show that race was the reason for the defendant's action." Wilson v. DNC Servs. Corp., 315 F. Supp. 3d 392, 400 (D.D.C. 2018). That is not to say, however, that a plaintiff must at this stage plead a *prima facie* case of discrimination under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). Rather, the complaint must simply "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Although "detailed factual allegations" are not necessary at this stage, Twombly, 550 U.S. at 555, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Plaintiffs alleging employment discrimination under § 1981 may, for instance, meet their pleading burden by alleging facts showing that they were treated worse than other, similarly

4

situated persons of a different race. See Brown v. Sessoms, 774 F.3d 1016, 1023 (D.C. Cir. 2014). Moreno-Livini has opted for that path here. See Opp. at 10.

To make out such a case, she must "demonstrate that all of the relevant aspects of her employment situation were nearly identical" to those of the comparators. Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (internal quotation marks removed). "A person is similarly situated to the plaintiff if he or she possesses all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination." De La Fuente v. DNC Servs. Corp., 2019 WL 1778948, at *7 (D.D.C. Apr. 23, 2019) (quoting Lucke v. Solsvig, 912 F.3d 1084, 1087 (8th Cir. 2019)). In other words, "[t]he co-workers must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Morris v. Carter Goble Lee, Inc., 113 F. Supp. 3d 289, 296 (D.D.C. 2015) (internal quotation marks omitted); see Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1116 (D.C. Cir. 2016) (same). "[O]rdinarily," determining whether two employees are similarly situated requires the resolution of questions of fact by a jury. George v. Leavitt, 407 F.3d 405, 414 (D.C. Cir. 2005) (internal quotation marks omitted). But a plaintiff's bare assertion that she is "similarly situated" to another employee is "just a legal conclusion — and a legal conclusion is never enough" to survive a motion to dismiss. SS & T, LLC v. Am. Univ., 2020 WL 1170288, at *5 (D.D.C. Mar. 11, 2020) (cleaned up).

Having hung her hat entirely on the comparators peg, Plaintiff is obligated to allege facts showing that such comparators were similarly situated to her. Despite her litany of grievances, however, Moreno-Livini's allegations of disparate racial treatment here remain so "threadbare"

5

that they do not meet even her "low burden." L. Xia v. Tillerson, 865 F.3d 643, 659 (D.C. Cir. 2017). She has alleged only that the four white males whom she names in the Complaint were her "marketing colleagues," Compl., ¶¶ 25, 28, people on the "marketing team" or the "sales team," id. ¶¶ 24–25, or simply other "salespeople." Id., ¶ 26. Mostly, she refers to them just as "colleagues." Id., ¶¶ 24–26, 28–29, 31–33, 35. But that term is "fatally nonspecific." Doe #1 v. Am. Fed'n of Gov't Emps., 554 F. Supp. 3d 75, 103 (D.D.C. 2021) (dismissing § 1981 claim where plaintiff identified comparator only as a "counterpart"). It does not give any indication of whether the four individuals had the same job title, dealt with the same supervisor, were subject to the same standards as Plaintiff, or performed at the same level as she did. Cf. Breiterman v. U.S. Capitol Police, 15 F.4th 1166, 1174 (D.C. Cir. 2021) (finding comparators were not similarly situated when they had "different ranks, titles, and job duties").

In her Opposition, Moreno-Livini further explains that her colleagues were "all tasked with marketing, networking, and sales responsibilities related to the pension products offered by" HIT and that all "traveled for work" and "went to conferences for sales, marketing, and networking purposes." Opp. at 10. Even assuming the truth of that additional commentary — and courts do not consider additional factual allegations in opposition briefs — it merely restates what is already implicit in the word "colleague." It does not show that Plaintiff's comparators possess "all the relevant characteristics that" she possesses. De La Fuente, 2019 WL 1778948, at *7.

On the contrary, several relevant differences are readily apparent. For instance, Plaintiff complains that HIT never registered to do business in Illinois, her home state, as it did for her comparators, which permitted them to work remotely; and she further points out that they were not required to travel to the District to work in person, as she was. See Compl., ¶¶ 26, 32. But

6

Plaintiff's own employment contract clearly contemplated that she would be working out of the District: it allocated $32,500 in moving expenses for her "relocation to the District of Columbia" and required reimbursement for those expenses if she chose to terminate her employment "prior to one year of service in [the] Washington, D.C. metropolitan area." ECF No. 6-2 (Contract) at 3. She nowhere alleges that her comparators were subject to similar expectations. Nor has she alleged that they were of similar seniority — a potentially dispositive consideration in assessing her claim that she was forced to do lower-level work that they were not given. See Compl., ¶ 29; Joyner v. Morrison & Foerster LLP, 2023 WL 6313194, at *5 (D.D.C. Sept. 27, 2023) (granting motion to dismiss where plaintiff was "silent" as to whether comparators had same substantive experience as plaintiff, handled same sort of work, shared a supervisor, or received assignments from same source).

      Indeed, Plaintiff admits that she differs from her purported comparators in at least one respect: she was hired primarily to sell public-pension plans, not HIT's traditional Taft-Hartley plans. See Compl., ¶ 23; ECF No. 6-1 (MTD) at 8. Moreno-Livini protests that this distinction is "specious," akin to differentiating between vegetable and fruit salesmen working at the same produce stand. See Opp. at 11. When, however, "[t]he only thing you got in this world is what you can sell," Arthur Miller, Death of a Salesman 72 (1949), the product may make all the difference. Put more directly, Plaintiff cannot minimize this admitted distinction between herself and her comparators simply by claiming that the "underlying sales duties [and] responsibilities" were the same. See Opp. at 11; see also Crawford v. Barr, 2020 WL 7051554, at *3 (D.D.C. Sept. 24, 2020) (rejecting that comparators were similar just because their "job content" and "actual day-to-day duties" were "substantially the same," despite differences in pay and division), aff'd sub nom. Crawford v. Garland, 2022 WL 1634557 (D.C. Cir. May 24, 2022).

At the end of the day, such differences matter. To plead discrimination via comparator evidence, Plaintiff must plausibly isolate her protected characteristics as the only relevant difference with her colleagues. Moreno-Livini has not done so. The Complaint is otherwise devoid of any other factual allegations giving rise to an inference of discrimination, despite its repeated references to Plaintiff's protected characteristics. See, e.g., Compl., ¶¶ 10, 44–45, 47–48. Such references, no matter how frequently noted, are not enough. See Mesumbe v. Howard University, 706 F. Supp. 2d 86, 92 (D.D.C. 2010) ("To plead intentional discrimination, [a] plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief.") (internal quotation marks omitted).

Even were this a close case, moreover, Plaintiff charted her course into stiff headwinds when she alleged that the very same people who hired her began to discriminate against her almost as soon as she arrived. See, e.g., Compl., ¶¶ 25, 29. As the D.C. Circuit has observed, "[I]t would be odd to select [an employee] and then immediately start ginning up reasons to dismiss her." Vatel v. Alliance of Auto. Mfrs., 627 F.3d 1245, 1247 (D.C. Cir. 2011); see also Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C. Cir. 2002) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.") (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)); 1 Larson, Employment Discrimination § 8.03[8] (2d ed. May 2024) (same). Such "same actor" suits, like this one, therefore face "significant initial hurdle[s]." Vatel, 627 F.3d at 1247; see also Czekalski v. Peters, 475 F.3d 360, 368–69 (D.C. Cir. 2007) (fact that defendant "was the person who selected" plaintiff for a position "in the first place" was "probative evidence against the claim that he harbored a general animus against female employees"). Plaintiff's case — which

8

was not seaworthy in its own right — founders on the presumption of regularity that this Circuit imputes to actors alleged to have discriminated against the very employees they have recently hired.

Although Moreno-Livini may believe that she got something of a raw deal, our antidiscrimination laws do "not authorize a federal court to become a super-personnel department that reexamines an entity's business decisions." Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal quotation marks omitted). Concluding that she has not plausibly alleged that race discrimination explains her adverse treatment, the Court will dismiss Count I.

B. Count II

Title VII prohibits discrimination in employment because of race, color, sex, or national origin. See 42 U.S.C. § 2000e-2(a). "In [both] Section 1981 and Title VII cases, courts use the same framework for determining whether unlawful discrimination occurred." Ayissi-Etoh, 712 F.3d at 576. For example, under Title VII, as under § 1981, "a litigant may rely on circumstantial evidence 'suggesting that the employer treated similarly situated persons who were not the same race as the plaintiff more favorably than it treated the plaintiff.'" Rassa v. Amtrak, 850 F. App'x 1, 2–3 (D.C. Cir. 2021) (quoting Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 296-97 (D.C. Cir. 2015)).

Plaintiff's second count alleges that HIT discriminated against her because of her "age, race, and gender" in violation of Title VII. See Compl., ¶ 64. After Defendants pointed out that Title VII does not protect against age discrimination, see MTD at 11, Plaintiff appears to have dropped that particular claim. See Opp. at 14 (focusing only on race and gender discrimination). Yet her race- and sex-based Title VII claims depend entirely on the same comparator evidence as her § 1981 claim. As Moreno-Livini has alleged no additional facts raising an inference of

9

discrimination beyond those just discussed in the § 1981 analysis, see Opp. at 15 (arguing only that the inference is supported "given the obvious disparate treatment"), her Title VII count meets the same fate.

   C. Count IV

The final count, comprising Moreno-Livini's claims under the DCHRA, can be quickly disposed of because the Court lacks subject-matter jurisdiction to resolve it. Plaintiff did not plead — and thus cannot rely upon — diversity jurisdiction to litigate her local-law claims. See Loughlin v. United States, 393 F.3d 155, 171 (D.C. Cir. 2004) ("[T]he party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action.") (quoting Naartez Consulting Corp. v. Watt, 722 F.2d 779, 792 (D.C. Cir. 1983)).

That leaves only supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. See id. § 1367(a). By the same token, courts "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion, as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In making that decision, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). When all federal claims are eliminated before trial, however, "the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise

jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ., 484 U.S. at 350 n.7); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding discretion set out in Carnegie-Mellon University "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the Court's exercise of subject-matter jurisdiction must follow Plaintiff's federal claims out the door. This case has not progressed in federal court past Defendants' Motion to Dismiss, and the Court has developed no particular familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court could appropriately retain pendent jurisdiction over state claims where it had "invested time and resources" in case) (quoting Osborn v. Haley, 549 U.S. 225, 245 (2007)). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. And Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) tolls the statute of limitations while the case is in federal court and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419, 424 (affirming district court and finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (cleaned up). The Court, therefore, will dismiss the DCHRA claim without prejudice, and Plaintiff may bring such claim, if not barred, in the appropriate local court.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ James E. Boasberg<br>
JAMES E. BOASBERG<br>
Chief Judge

Date: September 11, 2024